UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MICHAEL MAZE | CIVIL ACTION NO. 05-1453-P |
| versus | JUDGE HICKS |
| DEPARTMENT OF CORRECTIONS, ET AL. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Michael Maze ("Plaintiff") was, at the relevant times, an inmate confined at the David Wade Correctional Center. He filed this civil rights action complaining of excessive force. Defendants have filed a motion for summary judgment on the grounds that Plaintiff did not exhaust his administrative remedies before he filed this action. It is recommend, for the reasons that follow, that the motion be granted and the complaint be dismissed.

**The Complaint**

Plaintiff alleges in his complaint and amendments (Docs. 1, 7 & 14) that between August 10 and September 11, 2004 he was subjected to excessive force by means of chemical spray and a pepperball gun on an almost daily basis. During most of this time, Plaintiff was allegedly confined to a "strip cell cage," clothed in a paper gown and fed a food-loaf diet. Plaintiff's complaints began on August 10, when he says he was locked in the "strip cell cage" pursuant to Posted Policy 53. Plaintiff alleges that he had been sentenced to serve 30 days in the cell because he spat on another inmate. He alleges that he completed his 30 days but the officers supervising him refused to acknowledge that fact. Officer Jamie Fussell was

summoned, and she told Plaintiff that she had reviewed his case and that he still had five days left to serve. Plaintiff began yelling for a higher ranking officer, and Capt. Louis Christian was called to the unit.

Christian told Plaintiff that if he did not stop yelling that he would be maced. Plaintiff continued to yell, so a video camera was set up in front of the cell, and Christian ordered Plaintiff to come to the cell bars and be retrained. Plaintiff refused, and he was maced and then shot, according to the complaint, 18 times with a pepperball gun.

Plaintiff alleges that Warden Michael was then called to the unit. Plaintiff alleges that the warden checked the review book, acknowledged that Plaintiff was correct in his calculation of time served, and directed that Plaintiff be taken off of Posted Policy No. 53 detention. That problem was resolved, but Plaintiff alleges that between August 25 and September 11, 2004 he was maced and/or shot with a pepperball gun and subjected to other force approximately one dozen times.

**Analysis of the Motion**

Before the court is a Motion for Summary Judgment (Doc. 19) filed by Defendants. They urge that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit. Congress has commanded that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e requires Plaintiff to exhaust

available administrative remedies before filing a Section 1983 suit and precludes him from filing suit while the administrative complaint is pending. Wendell v. Asher, 162 F.3d 887 (5th Cir. 1999). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege the use of excessive force or denial of medical care. Porter v. Nussle, 122 S.Ct. 983 (2002); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

The summary judgment evidence shows that the policy at David Wade for filing an administrative grievance first required Plaintiff to "make [his] request to the Warden in writing within a 90 day period after an incident has occurred." The policy instructs the inmate to briefly set out the basis for his claim and the relief sought. The request will be screened by the ARP screening officer, and a notice will be sent to the inmate advising that his request is being processed or is being rejected. If the grievance is processed, an additional response will be issued. The warden must respond to this first step within 40 days from the date the request is received. If the inmate does not receive satisfaction at the first step, he may exhaust his available administrative remedies by taking a second step appeal to the Secretary of the Department of Public Safety and Corrections within 5 days of receipt of the first-step decision.

The only first-step grievance filed by Plaintiff in connection with any of the events alleged in his complaint was a grievance received by prison officials on August 16, 2004. Plaintiff complained about events that occurred six days earlier on August 10. He described

how Officer Fussell refused to acknowledge that she had miscalculated his sentence completion date, that he was forced to create a disturbance to draw the attention of a higher official who would correct the mistake, and that mace and the pepperball gun were used illegally against him. Doc. 19-4, pp. 25-26.

Defendants have not directed the court to a provision in the grievance procedure that specifically instructs inmates to limit their complaints to one incident per grievance, but the policy does provide that the ARP screening officer, who "should not unreasonably restrain the inmate's opportunity to seek a remedy," may reject a grievance for only certain listed reasons. One of the reasons is that the inmate "has requested a remedy for more than one incident (a multiple complaint)." Doc. 19-4, p. 13. Becky Moss, the ARP screening officer, rejected Plaintiff's grievance based on that rule. She issued a written decision that treated the complaints about the events of August 10 as three, separate incidents. It provided:

> "REJECTED: Your request has been rejected for the following reason(s):
> MULTIPLE COMPLAINTS EACH COMPLAINT SHOULD BE ADDRESSED SEPARATELY: (1) MS. FUSSELL REFUSED TO TAKE HIM OFF OF PP53; (2) FORCED TO CREATE A DISTURBANCE AND SGT. SELLERS REFUSED TO COMPLY WITH HIS REQUEST TO SEE RANK; CAPT. CHRISTIAN RESPONDED TO SUCH DUSTURBANCE (sic) AND REFUSED TO ACKLINGED (sic) FACTUAL PROOF THAT HE SHOULD NOT BE ON PP53; (3) CHEMICAL AGENTS, MACE WAS USED 3 TIMES AND THEN THE PEPPER BALL GUN WAS USED AND USED ILLEGALLY AS WELL AS THE MACE"

Doc. 19-4, p. 24. Plaintiff acknowledged receipt of that decision on August 19, 2004, the same day it issued. Doc. 19-4, p. 23. Plaintiff did not timely file a second step grievance, but he did later send to the Secretary a letter dated September 8, 2004 in which he

complained that he had been maced and shot with a pepperball gun almost every day since August 10. Plaintiff also mentioned that he had filed an ARP grievance and claimed that David Wade officials kept sending it back. Doc. 6, p. 3. To the extent this letter could be considered a step-two grievance, it would have been untimely. The Secretary apparently did not consider the letter a step two application; there is no evidence of a formal response as is typically issued in connection with a step two application.

A reasonable person might view Ms. Moss's application of the rule regarding a complaint about more than one incident as being an overly technical application of that rule, but Plaintiff could have easily cured Ms. Moss's procedural objections by filing a separate grievance for each of the three incidents outlined in Ms. Moss's response. Plaintiff had plenty of time to do so because he had 90 days from the date of the incident to file grievances, and he received the rejection only nine days after the date of the incident. There is no evidence that Plaintiff filed separate grievances or otherwise attempted to cure the procedural objections. There is also no evidence that Plaintiff filed a grievance with respect to any of the alleged uses of force that occurred in the several days following August 10.[1]

---

[1] A grievance about being subjected to repeated assaults or other repetitive behavior may adequately inform prison officials of a situation so that additional grievances need not be filed after each assault or at the end of each time period for filing a step one grievance. Johnson v. Johnson, 385 F.3d 503, 520-21 (5th Cir. 2004). The grievance filed by Plaintiff did not, however, alert officials to an ongoing problem as alleged in the complaint. Rather, Plaintiff focused his grievance on the events of August 10, 2004 without any suggestion of a continuing problem. That type of grievance does not automatically exhaust claims that arise from future incidents of the same general type. Johnson, 385 F.3d at 521, n. 13.

The Supreme Court has recently made clear that proper exhaustion under Section 1997(e)(a) demands compliance with the prison's deadlines and other critical procedural rules. Woodford v. Ngo, 126 S.Ct. 2378 (2006) (untimely grievance does not properly exhaust). Plaintiff did not comply with a procedural requirement imposed by the prison policy and, despite ample time to cure the procedural problem by submitting separate grievances, Plaintiff did not take adequate steps to properly exhaust his administrative remedies before he filed this civil action.[2]

Accordingly;

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 19)** be **granted**, and that Plaintiff's complaint be **dismissed with prejudice** for failure to properly exhaust administrative remedies before filing this civil action.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

---

[2] Prison policy provides that if multiple requests, such as Ms. Moss suggests Plaintiff should have filed, are filed, that the grievances will be logged and set aside for handling only after the system has been exhausted at the second step for the first filed grievance. This rule may have slowed the processing of the multiple requests, but it would not have prevented their filing, and prescription would have been tolled during the time the grievances were pending. Harris, 198 F.3d at 153.

party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 28th day of September, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE